**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**
Robert J. Berg (RB-8542)
2050 Center Avenue
Fort Lee, NJ 07024
(201) 592-3201

**MILBERG WEISS BERSHAD**
 **HYNES & LERACH LLP**
Steven G. Schulman
Samuel H.  Rudman
David A. Rosenfeld
One Pennsylvania Plaza - 49th Floor
New York, NY  10119
(212) 594-5300

**Attorneys For Plaintiff**

RECEIVED   CLERK

2001 FEB 15   P 1: 31

UNITED STATES
   DISTRICT COURT

# FILED

**FEB 1 6 2001**

AT 8:30 _____ M
WILLIAM T. WALSH
      CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARVIN MYERS, On Behalf of Himself And All Others Similarly Situated, ) ) ) )| CIVIL ACTION NO. _____ 01 CV 829 (KSH) |
| Plaintiff, ) )| |
| vs. ) )| CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS |
| SCHERING-PLOUGH CORPORATION, RICHARD J. KOGAN and THOMAS H. KELLY, ) ) )| |
| Defendants. ) ) )| **JURY TRIAL DEMANDED** |

Plaintiff has alleged the following based upon the investigation of plaintiff's

counsel, which included a review of United States Securities and Exchange Commission

("SEC") filings by Schering-Plough Corporation ("Schering-Plough" or the "Company"), as well

as regulatory filings and reports, securities analysts' reports and advisories about the Company,

press releases and other public statements issued by the Company, and media reports about the

Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal class action on behalf of purchasers of the common stock of Schering-Plough between July 25, 2000 and February 15, 2001, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC") [17 C.F.R. § 240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b).  Schering-Plough maintains its principal place of business in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

5.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.      Plaintiff Marvin Myers, as set forth in the accompanying certification,

incorporated by reference herein, purchased the common stock of Schering-Plough at artificially inflated prices during the Class Period and has been damaged thereby.

7.      Defendant Schering-Plough is a worldwide pharmaceutical company that discovers and markets new therapies and treatment programs. The Company's core product groups include allergy/respiratory, anti-infective/anticancer, dermatological and cardiovascular, as well as animal health business. It also conducts health management programs and sells other consumer products. The Company's executive offices are located at 2000 Galloping Hill Road, Kenilworth, NJ 07033.

8.      The individual defendants, at all times relevant to this action, served in the capacities listed below and received substantial compensation:

| **Name** | **Position** |
| --- | --- |
| Richard J. Kogan | Chairman, and Chief Executive Officer |
| Thomas H. Kelly | Vice President and Controller |

9.      Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about its business, operations, products, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

10.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the

3

Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of Schering-Plough, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11.     As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was traded on the New York Stock Exchange (the "NYSE"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Schering-Plough, each of the Individual Defendants had access to the adverse undisclosed information about Schering-Plough's business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Schering-Plough and its business issued or adopted by the Company materially false and misleading.

13.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

14.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Schering-Plough common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Schering-Plough's business, operations, management and the intrinsic value of Schering-Plough common stock; (ii) enabled

5

the Individual Defendants and other insiders to sell more than $41.3 million worth of their personally-held shares of Schering-Plough common stock at artificially inflated prices; and (iii) caused plaintiff and other members of the Class to purchase Schering-Plough securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

15.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of Schering-Plough between July 25, 2000 and February 15, 2001, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

16.    The members of the Class are so numerous that joinder of all members is imprac-ticable. Throughout the Class Period, Schering-Plough common shares were actively traded on the NYSE. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Schering-Plough or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that custom-arily used in securities class actions.

17.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

6

18.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

19.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by defendants' acts as alleged herein;

b.     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Schering-Plough; and

c.     to what extent the members of the Class have sustained damages and the proper measure of damages.

20.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### The Company

21.     Schering-Plough is a worldwide pharmaceutical company that discovers and markets new therapies and treatment programs. The Company's core product groups include allergy/respiratory, anti-infective/anticancer, dermatological and cardiovascular, as well as

7

animal health business. It also conducts health management programs and sells other consumer products.

**Factual Background**

22.    In September 1999, Schering-Plough announced that it was recalling some of its aerosol inhaler products because of manufacturing deficiencies that had been detected. Although it was conducting the recall in cooperation with the U.S. Food & Drug Administration ("FDA"), just a few months earlier, the FDA found that Schering-Plough had failed to comply with quality control guidelines in tests of finished batches of Proventil inhalers. Unbeknownst to the public, the manufacturing problems that the Company was experiencing were much more severe and widespread than were being disclosed.

23.    By the start of the Class Period, on July 25, 2000, the severity of these problems increased to the extent that defendants had a duty to disclose that their manufacturing problems were much more severe and pervasive than had been represented. Nevertheless, before disclosing the extent of these problems to the public, the Individual Defendants, together with other insiders, sold their personally-held shares of the Company's common stock at artificially inflated prices, realizing proceeds of over $41.3 million.

24.    Throughout the Class Period, defendants' failure to disclose the extent of its exposure to its manufacturing problems, falsely implied that there were no known impediments to receiving approval for its most-important new drug, desloratadine, which was in the final stage of the FDA's review process. Desloratadine, which will be sold and marketed in the United States under the name Clarinex, is the next generation of the drug Claritin, and is being relied on by Schering-Plough to replace Claritin, once the patent for Claritin expires in December 2002 and generic forms of the drug become available by competitors at lower prices.

8

Claritin, Schering-Plough's most successful product, is the largest selling prescription hay fever product. It currently commands a 45% market share and had sales of $3 billion in 2000. Schering-Plough desperately needs to gain FDA approval for Clarinex immediately in order to ship Clarinex to pharmacies before the beginning of the allergy season, which begins next month. Several analysts have expressed their concern about the likely negative impact a delay in bringing Clarinex to market would have on the Company's common stock.

25.     When, on February 15, 2001, Schering-Plough finally disclosed the extent of the problems it was experiencing with its manufacturing practices, it was also forced to reduce sales and earnings expectations for the first quarter of 2001 and for the full-year 2001. Additionally, the Company reported that the FDA was requiring that all of its manufacturing deficiencies be resolved before the FDA would grant final approval of desloratadine.

## MATERIALLY FALSE AND MISLEADING
## STATEMENTS ISSUED DURING THE CLASS PERIOD

26.     The Class Period begins on July 25, 2000. On that day, Schering-Plough issued a press release announcing its financial results for the second quarter, the period ending June 30, 2000. The Company reported that diluted earnings per share increased 16% to $0.43 per share on net income of $634 million versus $0.37 per share on net income of $547 million in 1999. Defendant Kogan commented on the results stating, in pertinent part, as follows:

> Driven by growth in worldwide pharmaceuticals, Schering-Plough turned in another solid performance in the second quarter, despite the negative impact of foreign exchange. . . . Schering-Plough's earnings per share for the year would be in line with the current consensus of analysts' estimates of $1.64, which would give us our 15th consecutive year of double-digit growth in earnings per share.

27.     On August 9, 2000, Schering-Plough filed its Form 10-Q with the SEC for the period ending June 30, 2000. The 10-Q, which was signed by defendant Kelly, repeated the

9

financial results set forth above in ¶ 26.  Additionally, in the section titled "Management's

Discussion & Analysis of Financial Condition and Results of Operations," defendants stated:

> From time to time, agencies, including the FDA, may require the Company to
> address various manufacturing, advertising, labeling or other regulatory issues.
> Failure to comply with governmental regulations or other manufacturing issues
> can result in delays in the release of products, seizure or recall of products,
> suspension or revocation of the authority necessary for the production and sale of
> products, fines and other civil or criminal sanctions.

> From time to time, the Company has received Warning Letters from the FDA
> pertaining to various manufacturing issues. Among these, the Company has
> received a Warning Letter from the FDA relating specifically to manufacturing
> issues identified during FDA inspections of the Company's aerosol products
> (albuterol and VANCERIL) manufacturing facilities in New Jersey. The
> Company is implementing remedial actions at these facilities. The Company has
> met with the FDA on several occasions to apprise the agency of the scope and
> status of these activities. The Company cannot predict whether its remedial
> actions will resolve the FDA's concerns, whether the FDA will take any further
> action or the effect of this matter on the Company's operations.

28.     On October 10, 2000, Schering-Plough issued a press release announcing that the

Committee for Proprietary Medicinal Products ("CPMP") of the European Agency for the

Evaluation of Medicinal Products issued a positive opinion recommending approval of

desloratadine in Europe, where it will be marketed as AERIUS (TM).

29.     On October 24, 2000, Schering-Plough issued a press release announcing its

financial results for the third quarter, the period ending September 30, 2000.  The Company

reported that diluted earnings per share increased 14% to $0.40 per share on net income of $591

million versus $0.35 per share on net income of $518 million in 1999.  Defendant Kogan

commented on the results stating, in pertinent part, as follows:

> Led by continued sales growth in worldwide pharmaceuticals, Schering-Plough
> achieved another solid performance in the third quarter. . . . For the full year, we
> expect that Schering-Plough's 2000 earnings per share will be in line with the

current consensus of analysts' estimates of $1.64, which would give us our 15th consecutive year of double-digit growth in earnings per share.

30.     On October 25, 2000, Robert Hazlett, an analyst at Robertson Stephens,

commented on Schering-Plough's financial results and stated, in pertinent part, as follows:

> We believe a number of meaningful events may be upcoming for the company in the near term, including the FDA approval[] of DCL [desloratadine] . . . before year-end. . . . However, we  think long-term growth remains a concern; we continue to rate SGP shares Market Performer.

31.     On November 13, 2000, Schering-Plough filed its Form 10-Q with the SEC for

the period ending September 30, 2000. The 10-Q, which was signed by defendant Kelly,

repeated the financial results set forth above in ¶ 29. Additionally, in the section titled

"Management's Discussion & Analysis of Financial Condition and Results of Operations,"

defendants stated:

> From time to time, agencies, including the FDA, may require the Company to address various manufacturing, advertising, labeling or other regulatory issues. Failure to comply with governmental regulations or other manufacturing issues can result in delays in the release of products, seizure or recall of products, suspension or revocation of the authority necessary for the production and sale of products, fines and other civil or criminal sanctions.

> From time to time, the Company has received Warning Letters from the FDA pertaining to various manufacturing issues. Among these, the Company has received a Warning Letter from the FDA relating specifically to manufacturing issues identified during FDA inspections of the Company's aerosol products (albuterol and VANCERIL) manufacturing facilities in New Jersey. The Company is implementing remedial actions at these facilities. The Company has met with the FDA on several occasions to apprise the agency of the scope and status of these activities. The Company cannot predict whether its remedial actions will resolve the FDA's concerns, whether the FDA will take any further action or the effect of this matter on the Company's operations.

32.     On November 28, 2000, Schering-Plough issued a press release announcing that it

is waiting for the FDA to approve desloratadine in the U.S. Although the Company refused to

11

predict when such approval would be granted, it said it that "it is making preparations for the potential availability of desloratadine for the spring 2001 allergy season."

33.    On January 16, 2001, Schering Plough issued a press release announcing that it had received the necessary final approval from the European Union to market desloratadine in Europe and would be doing so under the names AERIUS (TM) and NEOCLARITYN (TM).

34.    On January 25, 2001, Schering-Plough issued a press release announcing its financial results for the fourth quarter and for the full year 2000, both periods ending December 31, 2000. The Company reported that, for the fourth quarter, diluted earnings per share increased 15% to $0.39 per share on net income of $506 million versus $0.34 per share on net income of $506 million in 1999. The Company further stated that diluted earnings per share for the full year 2000 increased 15% to $1.64 per share on net income of $2.4 billion versus $1.42 per share on net income of $2.1 billion in 1999. Defendant Kogan commented on the results stating, in pertinent part, as follows:

> Schering- Plough turned in another strong performance in 2000, recording double-digit growth in earnings per share for the 15th consecutive year. Worldwide pharmaceuticals again drove higher sales, led by growth in our three largest therapeutic product categories: allergy/respiratory, anti-infective/anticancer and cardiovascular.

35.    Also on January 25, 2001, Schering-Plough issued a press release announcing that it had received an "approvable" letter from the FDA on January 19, 2001, for desloratadine and was now only one step away from receiving final approval of the drug.

36.    The statements referenced above in ¶¶ 26-29 and ¶¶ 31-35 were materially false and misleading because they failed to disclose certain material facts, including, inter alia:

12

(a) that the Company was experiencing manufacturing difficulties at its plants in Union, N.J., Kenilworth, N.J., Manati, Puerto Rico and Las Piedras, Puerto Rico, such that it was distracted from producing products at the levels budgeted for the respective plants;

(b) that the Company's manufacturing policies and procedures at its plants in Union, N.J., Kenilworth, N.J., Manati, Puerto Rico and Las Piedras, Puerto Rico, did not comply with applicable FDA regulations regarding the manufacture of pharmaceutical products;

(c) that the Company's manufacturing problems were more widespread and severe than the previously-announced problems at the aerosol plant;

(d) given the Company's manufacturing difficulties, the risk that the FDA would force the Company to curtail its operations and delay FDA approval of desloratadine so that the Company could correct the problems was much greater than defendants had disclosed; and

(e) that based on past practices and policies of the FDA and the nature and extent of the identified deficiencies, it was certain that the FDA would conduct a follow-up inspection of the New Jersey facilities.

## THE TRUTH IS REVEALED

37.     On February 15, 2001, after the close of the market, Schering-Plough finally revealed the extent of its manufacturing problems and the impact it would have on revenues and earnings for the first quarter of 2001 and for full year 2001, as well as the additional delay that would now be imposed on the FDA's approval of Clarinex. The Company issued a press release announcing, in pertinent part, that:

> [T]he U.S. Food and Drug Administration (FDA) has been conducting inspections of the company's manufacturing facilities in New Jersey and Puerto Rico, and has issued reports citing deficiencies concerning compliance with current Good Manufacturing Practices (GMPs), primarily relating to production processes, controls and procedures.

13

* * * * *

Schering-Plough anticipates that first quarter 2001 diluted earnings per share will
be lower by as much as 15 percent versus the 42 cents per share reported for the
same period last year. Some factors affecting first quarter results also are
expected to negatively affect earnings for the full year 2001, although the extent
of this impact will depend upon the timing and nature of a resolution of the
manufacturing issues. The company has not previously made an earnings
projection for 2001.

Schering-Plough said among the issues affecting its ability to manufacture and
ship certain pharmaceutical products has been the temporary interruption of some
production lines to install system upgrades and further enhance compliance, and
other technical production and equipment qualification issues.

* * * * *

Schering-Plough also reported that FDA has advised the company that GMP
deficiencies cited in facility inspection reports must be resolved prior to granting
approval of the company's pending New Drug Application (NDA) for
CLARINEX(TM) (desloratadine) Tablets. In response to a Jan. 19, 2001
``approvable'' letter for CLARINEX, Schering-Plough has submitted revised
product labeling as requested by FDA and there are no outstanding scientific or
clinical issues that would affect approval of the product. Schering-Plough said it
is ready to launch CLARINEX into the U.S. market upon approval. The company
noted that it continues to market CLARITIN® (loratadine), the nation's
largest-selling nonsedating antihistamine.

38. Despite the close of the regular market, the response to this announcement was

immediate and punitive. In after-hours trading, the price of Schering-Plough common stock

sank to $38.75 per share after closing earlier in the day at $48.32. On February 16, 2001, the day

after the announcement, the stock opened up for trading at $38.25.

39. The market for Schering-Plough's common stock was open, well-developed and

efficient at all relevant times. As a result of these materially false and misleading statements and

failures to disclose, Schering-Plough common stock traded at artificially inflated prices during

the Class Period until the time the fact that Schering-Plough had engaged in the wrongful course

of conduct described herein was finally communicated to and understood by the securities

14

markets. Plaintiff and other members of the Class purchased or otherwise acquired Schering-Plough common stock relying upon the integrity of the market price of Schering-Plough stock and market information relating to Schering-Plough and have been damaged thereby.

40.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Schering-Plough's business, business practices and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Schering-Plough and its business, finances and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at an artificially inflated price, thus causing the damages complained of herein.

### Undisclosed Adverse Information

41.     The market for Schering-Plough's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Schering-Plough's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Schering-Plough securities relying upon the integrity of the market price of Schering-Plough's securities and market information relating to Schering-Plough, and have been damaged thereby.

42.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Schering-Plough's securities, by publicly issuing false and

misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, including, inter alia:

(a) that the Company was experiencing manufacturing difficulties at its plants in Union, N.J., Kenilworth, N.J., Manati, Puerto Rico and Las Piedras, Puerto Rico, such that it was distracted from producing products at the levels budgeted for the respective plants;

(b) that the Company's manufacturing policies and procedures at its plants in Union, N.J., Kenilworth, N.J., Manati, Puerto Rico and Las Piedras, Puerto Rico, did not comply with applicable FDA regulations regarding the manufacture of pharmaceutical products;

(c) that the Company's manufacturing problems were more widespread and severe than the previously-announced problems at the aerosol plant;

(d) given the Company's manufacturing difficulties, the risk that the FDA would force the Company to curtail its operations and delay approval of desloratadine so that the Company could correct the problems was much greater than defendants had disclosed; and

(e) that based on past practices and policies of the FDA and the nature and extent of the identified deficiencies, it was certain that the FDA would conduct a follow-up inspection of the New Jersey facilities.

43.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Schering-Plough's business, prospects and operations. These material

16

misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Schering-Plough and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## SCIENTER ALLEGATIONS

44.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Schering-Plough, their control over, and/or receipt and/or modification of Schering-Plough's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Schering-Plough, participated in the fraudulent scheme alleged herein.

45.     While Schering-Plough insiders were issuing false and misleading statements about Schering-Plough and its business, the Individual Defendants together with other insiders, directly or indirectly, disposed of over $41.3 million worth of personally-held stock, benefitting from the artificial inflation in Schering-Plough's stock price their fraudulent scheme had created. The Individual Defendants and other insiders sold shares during the Class Period as follows:

17

| HUGH A DANDRADE | | |
|---|---|---|
| Date | Shares | Value |
| 10/9/00 | 52,563 | $2,426,304 |
| 11/21/00 | 66,309 | $3,547,532 |
| 12/6/00 | 26,107 | $1,394,061 |
| TOTALS | | $7,367,897 |

| GERALDINE U FOSTER | | |
|---|---|---|
| Date | Shares | Value |
| 10/26/00 | 9,623 | $511,655 |
| 12/5/00 | 8,336 | $460,564 |
| 12/12/00 | 32,000 | $1,324,160 |
| TOTALS | | $2,296,379 |

| DOUGLAS J GINGERELLA | | |
|---|---|---|
| Date | Shares | Value |
| 12/5/00 | 4,515 | $249,520 |
| TOTALS | | $249,520 |

| ROBERT PETER LUCIANO | | |
|---|---|---|
| Date | Shares | Value |
| 10/9/00 | 65,264 | $3,101,529 |
| TOTALS | | $3,101,529 |

| ROBERT S LYONS | | |
|---|---|---|
| Date | Shares | Value |

19



| 11/15/00 | 8,386 | $452,844 |
| 12/15/00 | 32,000 | $1,382,080 |
| TOTALS | | $1,834,924 |

| F. KEVIN MOORE | | |
| --- | --- | --- |
| Date | Shares | Value |
| 12/4/00 | 8377 | $464,043 |
| TOTALS | | $464,043 |

| CARL E MUNDY | | |
| --- | --- | --- |
| Date | Shares | Value |
| 12/29/00 | 1,600 | $91,104 |
| TOTALS | | $91,104 |

| DANIEL A NICHOLS | | |
| --- | --- | --- |
| Date | Shares | Value |
| 10/16/00 | 23,320 | $1,068,989 |
| 11/22/00 | 25,000 | $1,348,500 |
| 12/5/00 | 10,398 | $567,835 |
| TOTALS | | $2,985,324 |

| JOHN P RYAN | | |
| --- | --- | --- |
| Date | Shares | Value |
| 10/13/00 | 11,240 | $457,925 |
| 12/4/00 | 7,166 | $395,922 |
| TOTALS | | $853,847 |

| WILLIAM J SILBEY | | |
|---|---|---|
| Date | Shares | Value |
| 12/4/00 | 3,592 | $194,323 |
| TOTALS | | $194,323 |

| JACK L WYSZOMIERSKI | | |
|---|---|---|
| Date | Shares | Value |
| 12/4/00 | 21,272 | $1,159,324 |
| 12/12/00 | 45,791 | $2,558,801 |
| TOTALS | | $3,718,125 |

### Applicability Of Presumption Of Reliance:
### Fraud-On-The-Market Doctrine

46.    At all relevant times, the market for Schering-Plough's securities was an efficient market for the following reasons, among others:

(a)  Schering-Plough's stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)  As a regulated issuer, Schering-Plough filed periodic public reports with the SEC and the NYSE;

(c)  Schering-Plough regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)  Schering-Plough was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain

21

customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

47. As a result of the foregoing, the market for Schering-Plough's securities promptly digested current information regarding Schering-Plough from all publicly available sources and reflected such information in Schering-Plough's stock price. Under these circumstances, all purchasers of Schering-Plough's securities during the Class Period suffered similar injury through their purchase of Schering-Plough's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

48. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Schering-Plough who knew that those statements were false when made.

22

## FIRST CLAIM

### Violation Of Section 10(b) Of
### The Exchange Act And Rule 10b-5
### Promulgated Thereunder Against All Defendants

49.     Plaintiff repeats and realleges each and every allegation contained above as if
fully set forth herein.

50.     During the Class Period, defendants carried out a plan, scheme and course of
conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing
public, including plaintiff and other Class members, as alleged herein; (ii) enable the Individual
Defendants and other insiders to sell more than $41.3 million worth of their personally-held
shares of Schering-Plough common stock at artificially inflated prices; and (iii) cause plaintiff
and other members of the Class to purchase Schering-Plough's securities at artificially inflated
prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each
of them, took the actions set forth herein.

51.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made
untrue statements of material fact and/or omitted to state material facts necessary to make the
statements not misleading; and (c) engaged in acts, practices, and a course of business which
operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to
maintain artificially high market prices for Schering-Plough's securities in violation of Section
10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary
participants in the wrongful and illegal conduct charged herein or as controlling persons as
alleged below.

52.     Defendants, individually and in concert, directly and indirectly, by the use, means
or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a
continuous course of conduct to conceal adverse material information about the business,

23

operations and future prospects of Schering-Plough as specified herein.

53.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Schering-Plough's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Schering-Plough and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Schering-Plough securities during the Class Period.

54.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

55.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Schering-Plough's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

56.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Schering-Plough's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of Schering-Plough's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired Schering-Plough securities during the Class Period at artificially high prices and were damaged thereby.

57.     At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that

Schering-Plough was experiencing, which were not disclosed by defendants, plaintiff and other

members of the Class would not have purchased or otherwise acquired their Schering-Plough

securities, or, if they had acquired such securities during the Class Period, they would not have

done so at the artificially inflated prices which they paid.

58.     By virtue of the foregoing, defendants have violated Section 10(b) of the

Exchange Act, and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the

other members of the Class suffered damages in connection with their respective purchases and

sales of the Company's securities during the Class Period.

### SECOND CLAIM

#### Violation Of Section 20(a) Of
#### The Exchange Act Against Individual Defendants

60.     Plaintiff repeats and realleges each and every allegation contained above as if

fully set forth herein.

61.     The Individual Defendants acted as controlling persons of Schering-Plough

within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their

high-level positions, and their ownership and contractual rights, participation in and/or

awareness of the Company's operations and/or intimate knowledge of the false financial

statements filed by the Company with the SEC and disseminated to the investing public, the

Individual Defendants had the power to influence and control and did influence and control,

directly or indirectly, the decision-making of the Company, including the content and

dissemination of the various statements which plaintiff contends are false and misleading.  The

Individual Defendants were provided with or had unlimited access to copies of the Company's

reports, press releases, public filings and other statements alleged by plaintiff to be misleading

26

prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.     As set forth above, Schering-Plough and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:        February 16, 2001

BERNSTEIN LIEBHARD & LIFSHITZ, LLP

By: _____
   Robert J. Berg (RB-8542)
   2050 Center Avenue
   Fort Lee, NJ 07024
   (201) 592-3201

**BERNSTEIN LIEBHARD & LIFSHITZ, LLP**
Mel E. Lifshitz
10 East 40th Street
New York, NY 10016
(212) 779-1414

**MILBERG WEISS BERSHAD**
  **HYNES & LERACH LLP**
Steven G. Schulman
Samuel H. Rudman
David A. Rosenfeld
One Pennsylvania Plaza - 49th Floor
New York, NY 10119
(212) 594-5300

**FRUCHTER & TWERSKY**
Jack Fruchter
60 East 42nd Street
Suite 4700
New York, NY 10165
(212) 687-6655

**Attorneys for Plaintiff**

S:\Secra\Schering-Plough\complaint.wpd

28

## CERTIFICATION OF MARVIN MYERS
### IN SUPPORT OF CLASS ACTION COMPLAINT

Marvin Myers ("plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint prepared by counsel in the above-captioned case and has authorized its filing.

2. Plaintiff did not purchase the securities that are the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. During the proposed Class Period, on August 14, 2001, plaintiff purchased 105 shares of Schering-Plough Corporation for $40.38 per share.

5. In the past three years, plaintiff has not served, nor sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws.

6. Plaintiff will not accept payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th day of February, 2001.

MARVIN MYERS

**BERNSTEIN LIEBHARD   & LIFSHITZ, LLP**
Robert J. Berg (RB-8542)
2050 Center Avenue
Fort Lee, NJ 07024
(201) 592-3201

**MILBERG WEISS BERSHAD**
 **HYNES & LERACH LLP**
Steven G. Schulman
Samuel H. Rudman
David A. Rosenfeld
One Pennsylvania Plaza - 49th Floor
New York, NY  10119
(212) 594-5300

**Attorneys For Plaintiff**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARVIN MYERS, On Behalf of Himself And All Others Similarly Situated,    ) ) ) | **CIVIL ACTION NO. _____** |
| Plaintiff,   ) ) | |
| vs.   ) ) SCHERING-PLOUGH CORPORATION, ) RICHARD J. KOGAN and THOMAS H. KELLY, ) | **CERTIFICATION OF NON-ARBITRABILITY** |
| Defendants.   ) ) ) ) | |

ROBERT J. BERG, of full age, certifies that pursuant to Local Rules of the

United States District Court for the District of New Jersey, the within matter is not arbitrable,

being that the Complaint seeks damages that are in excess of $100,000.

Dated:      Fort Lee, New Jersey
           February 16, 2001

                                   _____
                                    Robert J. Berg

S:\Secra\Schering-Plough\complaint.wpd