NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE SCHERING-PLOUGH CORPORATION SECURITIES LITIGATION | 01-CV-0829 (KSH/MF)<br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

Before the Court are Orders emanating from a settlement of the within matter, which is a securities litigation brought on behalf of persons who purchased Schering-Plough securities during the period from May 9, 2000 through and including February 15, 2001. On February 19, 2009, this Court issued an Order providing for notice of the settlement terms and attorneys' fees request to over 320,000 potential class members. Following the notice period the Court held a hearing during which the proposed plan of allocation, the terms of settlement, and the attorneys' fees request were examined and discussed.

Based on a review of the submissions to date, the information gathered at the hearing, and the Court's familiarity with this litigation, which has been pending for several years, the Court is satisfied that the Orders issued herewith are an appropriate resolution of this litigation.

**I. Settlement and Plan of Allocation**

Beginning in February, 2001, 17 class actions were filed in this District following a sharp decline in value of Schering-Plough stock after the company announced the Food and Drug Administration ("FDA") had cited it for deficiencies and withheld approval of the drug Clarinex.

1

After consolidation, the Florida State Board of Administration ("FSBA") was appointed lead plaintiff by then Magistrate Judge Ronald Hedges. The FSBA filed its complaint on October 11, 2001. In December, 2001, Schering-Plough moved to dismiss. The motion was fully briefed and argued, and this Court denied it in May, 2002. During the next months, discovery was ongoing on the issues raised in the complaint and on lead plaintiff's motion for class certification. The latter motion was the subject of considerable litigation, resulting in a Report and Recommendation by Judge Hedges that was adopted by this Court over objection by an Order granting class certification entered in October 2003. Document discovery continued into 2004, in the course of which Schering-Plough produced in excess of 600,000 documents to lead plaintiff. In 2004, lead plaintiff conducted depositions of 32 fact witnesses. During 2005 and 2006, the parties exchanged interrogatories, and in 2006 and 2007, defendants took fact depositions of witnesses, among them a representative of FSBA, which produced 7,000 pages of documents in response to defense requests.

Expert discovery was extensive; lead plaintiff took 10 depositions of defense experts and the defendants took five depositions of plaintiffs' experts.

In June 2007, the Court directed that notice of the action be sent to the Class, as a result of which over 280,000 potential class members were notified of the pendency of the litigation.

Late in 2007, the parties filed respective motions for summary judgment on a variety of issues. By February 2008, all issues raised were fully briefed. At that point, the possibility of mediation – first raised, according to the parties, by Magistrate Judge Falk in August, 2004 – became a viable option. Up until then, the parties had struggled to agree upon who would mediate, finally settling on Hon. Edward A. Infante, U.S.M.J. (Ret.). Judge Infante held a mediation session in November, 2005 in Philadelphia, Pennsylvania. The planned second

session foundered, however, because the parties could not agree on the scope of mediation, and for two years the parties directed their efforts toward full-scale litigation, not surprisingly given the heat behind the issues, the fact that liability was fiercely contested by the individual and corporate defendants, and the complexity of the issues.

But in June, 2008, while the summary judgment motions were pending, the parties met for the first of several mediation sessions that resulted in an agreement-in-principle to accept the settlement number recommended by Judge Infante of $165 million.

This Court is familiar with the contentions of both sides, which were aired during the heavily contested motion to dismiss litigated back in 2002. The Court also had the experience of reviewing and ultimately approving the derivative suit, *In Re Schering-Plough Corp. S'holder Derivative Litig.*, 01-cv-1412, 2008 WL 185809 (D.N.J. 2008), where the Court granted final approval of the settlement on January 15, 2008, wherein a textbook plan for achievable best practices was negotiated with the assistance of Judge Infante. As a result, and notwithstanding the economic upheavals of the past calendar year and the systemic concerns about class action settlements, the Court views this particular case as a species best characterized as plain old-fashioned litigation that involved hard work and good judgment in ultimately achieving a negotiated resolution of substantial value to the class.

The settlement amount, $165 million, which is among the five largest securities class action recoveries in the District of New Jersey, was reached under the auspices of a highly-regarded mediator, who had the benefit of a fully litigated case that had persisted up through fully briefed summary judgment motions. Mediation sessions began years before the ultimate settlement, foundered, recovered, gained traction, and were successful – a pattern that demonstrates arms-length negotiating. In choosing mediation rather than a jury trial, the parties

showed their respect for the difficulty of predicting a trial outcome given the matters in contention: claims of security fraud and actionable misstatement that were strongly disputed, and nuanced legal issues about scienter, loss causation, and the amount of damages. Given all of this, the settlement enjoys the presumption of reasonableness.

Along with, and in part reflecting, the overarching presumption of reasonableness, the Third Circuit has set forth a non-exhaustive list of specific factors for district courts to consider in deciding whether to approve a class action settlement, which are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). Applying them here, the Court finds:

- *(1) The complexity, expense and likely duration of the litigation*

In lead plaintiff's brief in support of final approval of the settlement and plan of allocation, page 15, counsel writes:

> At issue in this Action was whether defendants misled investors by failing to disclose the true breadth and depth of Schering-Plough's manufacturing and quality deficiencies and whether such deficiencies posed a significant impediment to timely FDA approval of the Company's pending new drug application for its Clarinex allergy drug. Lead Plaintiff has the burden of proof with respect to all of the elements of its claims, including proving the false and misleading nature of Defendants' statements, the materiality of the statements made or omissions alleged, the Defendants' scienter, loss, causation and damages.

This is a cogent description of the case and illustrates that the end of the road to recovery, even were the plaintiffs to win at trial, "might be miles and years away." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 837 (W.D. Pa. 1995).

- *(2) The reaction of the class to the settlement*

There were no objections to the settlement. Case law in this Circuit establishes that the absence of objections, or a small number of objections, is strong evidence that the settlement is fair and reasonable. *E.g.*, *Bell Atl. Corp. v. Bogler*, 2 F.3d 1304 (3d Cir. 1993); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990).

- *(3) The stage of the proceedings and the amount of discovery completed*

*See* discussion of the history of the litigation above. Familiarity with the case suggests that characterizing the case as "vigorously" litigated is a substantial understatement. The benefit of the extensive discovery and legal briefing to the mediation process that produced the settlement is obvious.

- *(4) The risks of establishing liability; and (5) the risks of establishing damages*

There were real-life events, actual people, serious allegations, a lengthy history of company/regulatory agency interactions, and complex legal issues that bore upon how confident either side could be regarding the outcome of this case were it to proceed to trial. As well, establishing damages through the adversary process posed risks to both sides, given the interplay of damages and liability findings available to a jury and the inevitability of a battle of the experts.

- *(6) The risks of maintaining a class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation*

The Court believes that the class action could be maintained through trial, and so this particular factor does not bear heavily on the analysis. But given the risks of litigation and the robust mediation process, the remaining factors support a finding that the settlement is reasonable and fair. The Court is satisfied that the most pertinent of this group, factor (7), is consistent with approval – while Schering-Plough arguably could pay more, pushing for more in the face of risks and delay would not be in the interests of the class.

Having examined the settlement in light of *Girsh*, the Court finds it to be fair and reasonable and will sign an appropriate order. As to the plan of allocation, the distribution is likewise fair, reasonable, and adequate, and the Court will sign an order to that effect. Initially, the Court notes the expertise of class counsel, who had the assistance of plaintiffs' expert on damages issues in creating the plan of allocation. Lead counsel's brief in support of an award of attorneys' fees is supported by declarations attesting to its experience, skill, and extensive time devoted to this case. The thrust of the allocation plan is to compensate for losses of class members based upon the date the stock was purchased and whether the stock was sold during the class period or held through the end of the class period. While it is of some significance that there have been no objections to the plan of allocation, the Court finds that the practical principles behind the plan support approving it in light of the analysis in *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104 (S.D.N.Y.), *aff'd* 117 F. 3d 721 (2d Cir. 1997). The formula has a reasonable, rational basis; it was fashioned by experienced class counsel; and it "provide[s] a

straightforward and equitable nexus for allocation and will avoid a costly, speculative and bootless comparison of the merits of the Class Members' claims." 171 F.R.D.at 135.

The Court grants final approval of the settlement and plan of allocation.

## II. Legal Fees and Reimbursement of Expenses

The Court is advised that the prosecution of this case was undertaken by lead counsel and other counsel working under its direction on an entirely contingent basis. They seek fees of 23% of the settlement fund and reimbursement of out-of-pocket expenses of $1,852, 207.61. The Court finds the requested amounts to be reasonable and not excessive.

After the notice that described the action, proposed settlement, date of final approval hearing, and lead counsel's intention to request fees of up to 23% of the fund and in excess of $2 million in costs and expenses, only two objections were made. (Notice of Proposed Class Action Settlement and Settlement Hearing; Objection letters, both attached to lead plaintiff's briefs.) The underlying premise – that counsel would receive fees out of the common fund that they created – is proper under the law of this Circuit, which recognizes the common fund doctrine. *See, e.g.*, *In re Computron Software, Inc. Sec. Litig.*, 6 F. Supp. 2d 313 (D.N.J. 1998). The percentage of recovery method of calculating fees in common fund cases is endorsed by all the circuit courts. *See In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722 (3d Cir. 2001); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *Swedish Hosp. Corp. v. Shalala*, 1 F. 3d 1261 (D.C. Cir. 1993).

Recognizing there is no benchmark for fee awards in this Circuit, the Court nonetheless finds that this award is on the low end of the range of 19 percent to 45 percent of the settlement

fund approved in other litigations.  And the factors in *Gunter v. Ridgewood Energy Corop.*, 223 F. 3d 190 (3d Cir. 2000), fully support the request.

The *Gunter* factors are: (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the Class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) awards in similar cases. *Gunter*, 223 F.3d at 195.

Most important, and easiest to point to, is the first factor, the size of the fund and the number of persons benefited.  As stated earlier, the Court is advised that this settlement is among the five largest securities litigation settlement awards in the District, and the class size is substantial.  More than 320,000 potential class members were sent mailings and a summary notice was published in the Wall Street Journal and issued over the PR Newswire.  Only two objections were made, which is strong evidence in favor of the reasonableness of the fee award. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) ("The District Court did not abuse its discretion in finding the absence of substantial objections by class members to the fee requests weighed in favor of approving the fee request"); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 131 (D.N.J. 2002) (where there was only one objector, the reaction of the class confirms the reasonableness of the requested fees); *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *7 (D.N.J. 2007) (lack of objections weighs strongly in favor of approving fee petition).

The remaining *Gunter* factors are satisfied by the history of this litigation detailed in this Opinion, the substantial amount of discovery and motion practice, the skill and experience

required to manage the complexity of the case, and the requisite judgment in bringing the matter to resolution aided by an experienced mediator who was familiar with the issues and the business practices of the defendant.

The Court has examined the analysis in Lead Plaintiff's Brief in Support of an Award of Attorneys' Fees and Reimbursement of Expenses that cross-checks the 23% of recovery request against a lodestar calculation. The results indicate that the requested fee of $37,950,000 is approximately a 1.5 multiplier of class counsel's lodestar. This further supports the Court's finding that the requested fee is not excessive.

Counsel has presented a comprehensive list of expenses in Plaintiffs' Appendix of Declarations. The requested reimbursement of $1,852,207.61 is lower than the estimated reimbursement communicated to the class members in the notice. The Court approves the amount requested as appropriately incurred and adequately documented. *See Safety Components Int'l Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) ("Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action") (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)). An appropriate order will be entered.

### III. Conclusion

For the foregoing reasons, the Court grants final approval of the settlement reached in this case; approves the proposed plan of allocation; and grants the request for legal fees and reimbursement of expenses. Consistent therewith, the Court shall enter an Order and Final Judgment, Order Approving Lead Counsel's Plan of Allocation, and Order Awarding Attorneys' Fees and Expenses to Lead Counsel.

/s/Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.

Dated:  December 31, 2009